May it please the Court, I'm Carl Shapiro. I'm the appellant's attorney in this matter. I can be very brief because I think that the issue is a very simple legal issue as to whether or not the papers which were presented to the judge and are back presented to you create a conflict in the evidence as to where the officer was at the moment he fired the seven shots into the automobile and killed Mr. Gaxiola. His original position, of course, was that he was at the front bumper and that the car headed toward him and he fired because the car was threatening his life. It turns out that a review of the evidence and his subsequent declaration indicates that he may well have been alongside the driver's door and no longer in the jeopardy which allowed him to use deadly force. The issue is whether or not there is a conflict in the evidence as to whether he, where he was, whether he was in danger of his life and if there is such a conflict as to where he was at the time he fired the fatal shots. This is, of course, a matter which I believe the jury should be given an opportunity to answer the questions which are raised by the pleadings. I believe that the issue of the summary judgment is dispositive whether or not there is a jury question, and I don't believe that it is a matter which I feel which is worth any further words on my part. Mr. Shapiro. Yes. I thought there was evidence from, evidence from the officer's uncompredictive evidence that the car was still turning, even though the officer may have been back near or even at the front door, that the car was turning toward the officer. That's the way it seemed to me the testimony came through. Is that correct or is that not correct? That's one of the things which I believe represents a question for a jury as to whether or not, considering the fact that the officer fired, allegedly fired through the window of the car into the left side of the, of the decedent, whether he was in fact jeopardized. And I believe that that's a very important question as to whether or not he could reasonably use fatal, deadly force merely because he says that the car threatened him when he was alongside of the car. I believe at a jury, at a jury trial, we will show that that automobile in fact could not have jeopardized him. You consider the testimony of the other officer and his, his inconsistent declarations, one of which puts him in the front, one of them puts him in alongside the car. I agree that there is a possibility that the jury might find that he was in fact in danger, in danger at the time that he fired the seven bullets. But I believe also that a jury could review this evidence and find that he was not. And that's, that's the question. Well, wasn't the, if the car was turning, wasn't the driver trying to escape? I'm sorry. If the car was turning, wasn't that a pretty good sign the driver was trying to escape? Why was he, why didn't he stop the car if he wasn't trying to escape? I can't speak for why the driver. But isn't that a sign he was escaping? If he turns, keeps the car going, turns, whichever way he turns. He hadn't done anything. What? The driver hadn't done anything. They didn't even know who he was until later. But he's trying to escape, is he not? He may well be trying to escape. But told to stop. Even if he is trying to escape, he cannot be subjected to deadly force without having, there's some evidence that he is a threat to somebody or has used deadly force himself or he's armed. And that's why Tennessee and Garner says that they have to, that when he's trying to escape, you have to measure the amount of force by what he has done, what a risk, what kind of a risk he represents to the public. I haven't any more to say. Right. Thank you, Mr. Shapiro. We'll hear from Mr. Edrington. Good morning, Justice. This is Peter Edrington for the City of Richmond, Detective Kruger and Detective Sapal. Briefly responding to comments made by plaintiff's counsel, he talks about possibilities that a jury might somehow divine from arguments he might make in evaluating the evidence should this case proceed to a jury trial. I'm not really, I'm certainly not the standard that is requisite for this Court to overturn the summary judgment ruling of the district court. He also stated that the defendants would have to present some evidence that Mr. Gaxiola was indeed a threat to the officers. In our view, we have submitted three declarations which are not controverted or contradicted in any way by any evidence offered by the plaintiff, to the effect that indeed Detective Kruger was in threat of immediate and deadly peril. Both officers came to that same conclusion virtually simultaneously. I was going to say, at the time, as Mr. Shapiro points out, there's a time when he's actually hitting the car and he's backed up, doesn't knock down. Obviously, he's in danger at that point. Yes, sir. But the diagrams and the bullet holes and all of that, so the holes went through the driver's side of the window, indicating that by the time the shots were fired, the car had turned to the left. And that's why I had the question. I thought that the officers testified in their declarations that the car was still turning toward them when they fired the shots that got this guy and killed him. That is exactly what the officers have testified to. When Detective Kruger first approached the vehicle, Sir Paul, Detective Sir Paul was coming from the rear of the vehicle, Detective Kruger from the front. They believed, based on indicia from Mr. Gaxiola, that he was prepared to surrender. In fact, as the record reveals, he apparently changed his mind. As the officer approached from the left front fender, his gun was in a drawn position. What happened was that Mr. Gaxiola then turned his wheel to the left in front of the officer. The officer then, according to the evidence we supplied at the trial court, which is before this Court as well, the officer then moved to his right to avoid being impacted by the vehicle. But the turning radius of the vehicle was such that the officer was only able to get several inches away from the front. He was struck by the left front quarter panel of that vehicle. And all the evidence supports that fact. Thereafter, the car continued to turn toward him. There's also an indication, as set forth in the evidence, that he may have been struck a second time on the driver's door. Where that occurred relative to the shooting is unknown. But the vehicle continued to turn into the officer in this, in that orientation so that the officer could not escape the vehicle. And the acceleration was quite rapid. One, the sergeant said he could hear the vehicle racing. This happened very quickly. So Paul, who was in the rear, the vehicle accelerated so rapidly that he was knocked back away from the vehicle. One of the wheels ran over his foot, and the driver's door then slammed shut with the force of the acceleration. I believe someone said, one of the officers noted that Mr. Gaxiola stomped on his accelerator. That he what? He stomped on it. On his accelerator. Then he was shot, and I guess what he said, his car stopped. Then why doesn't it hit the guy after he's shot? Why didn't Kruger get hit after he's shot? So the Detective Kruger was simply unable to take any evasive action to take him out of the turning radius of that Mercury Monarch, which is why he was constrained to fire. The car was coming directly at him. In our view, certainly he would, his conduct in that. He may have been hit the second time. He may very well have been. There's evidence on the driver's door to suggest that. And in response to something that Your Honor said moments ago, in terms of the direction of the bullets into the vehicle, Detective Soler, who prepared that report, in his declaration, the Court recalls, specifically stated that he was not taking any position in his report as to the movement of that vehicle or the movement of the officer in diagramming the entry locations of the various bullets that were fired. Detective Sapal indicates that there may have been one bullet fired from Detective Kruger before he fired, but the fact that both officers fired their guns concurrently is strongly suggested, in our view, respectfully probative of the fact that Kruger's conduct was objectively reasonable in perceiving a threat of immediate and deadly consequences, whereas Detective Sapal perceived that same threat at the same time to Detective Kruger. In our view, the plaintiff having offered no evidence in apposite to the declarations provided by the three officers present at the scene, it is clear in our view that the Court was correct in finding that there is no Fourth Amendment violation clearly under Tennessee v. Garner that the Supreme Court decided 20 years ago that police officers can use deadly force if he perceives himself to be an immediate and deadly peril. That is the situation in this case. This conduct was objectively reasonable. He had no alternative in his mind to protect his life but to fire into the vehicle. It's unfortunate that Mr. Gax-Hill did not simply proceed straight ahead or to his right or back up. It would have obviated the need for the officers to respond as they did. Instead, he drove right into that police officer and struck him in the process. If the Court's just very briefly touched upon the issues of qualified immunity, the Court is well-versed in this issue, I know. However, if there is some question as to whether there is a Fourth Amendment violation, clearly both officers would be entitled to qualified immunity under these facts. The language, I think, that is critical in this case is that, taken from Graham v. Connor, the Court must consider that the officers have to make split-second judgments regarding force necessary in a tense and rapidly evolving situation. This, by definition, was a rapidly evolving situation. Neither officer could have anticipated that Mr. Gax-Hill, after initially indicating that he was going to surrender, would turn his vehicle into one of the officers and strike him in the process. The situation moved so quickly that both officers reasonably concluded that they had to fire to save the one officer's life. So in a situation like this, the officer would not have the time to pause it or pose the question as to what conduct might be reasonable under the Fourth Amendment. He had to act with dispatch. Therefore, in our view, there certainly is an entitlement to qualified immunity. Finally, as to the city, as this Court knows, the plaintiff offered no evidence which would be suggestive of any custom, policy, pattern, or practice that the City of Richmond supported, tolerated, ratified any conduct which was extra constitutional. I'll submit it to the Court, unless any questions from the Justices. Thank you, Your Honors. Ms. Shapiro. Shapiro, the argument of counsel was the argument to the jury. That's the issue is whether or not the – there is no evidence whatsoever refuting the allegations of the officer that he was in a position of danger. It is a simple observation that a man who is standing alongside of a car may well be in a better position to step back two steps than he is to fire fatal bullets. I believe that the question is clearly one as to whether or not you can say without any hesitation that there's no conflicting evidence about the danger which was represented to Officer Kruger. Thank you. All right. Thank you, counsel. The matter just argued will be submitted, and we'll hear next argument in Blanford.
judges: Noonan, Thompson, Rymer